**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

JASON BARNETTE,

        **Plaintiff,**

v.                                **Case No. 2:18-cv-01348**

EQUIFAX, INC. *et al.*,

        **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court is a Motion to Dismiss filed by defendant FirstMark Services, LLC (which is identified in the motion documents as "Nelnet Servicing, LLC d/b/a FirstMark Services") (hereinafter "Nelnet"), which is unopposed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to Nelnet's motion, on or about May 12, 2003, the plaintiff executed a OneChoice Promissory Note, which was co-signed by "Anderson Barnette," in favor of Education Credit Services Company to obtain a student loan to attend law school at the Appalachian School of Law.  (ECF No. 19, Ex. A).  Thereafter, Nelnet began servicing the plaintiff's student loan account.

On January 13, 2011, the plaintiff filed a petition under Chapter 13 of the United States Bankruptcy Court in the United States Bankruptcy Court for the Southern District

of West Virginia. (*See In re: Barnette*, No. 2:11-bk-20017, ECF No. 1).[1]  As relevant herein, on September 6, 2011, the plaintiff filed an amended reorganization plan ("Amended Plan"), which addressed, in part, the treatment of student loans, including the loan serviced by Nelnet. (*Id.*, ECF No. 77 at 9-10).  The Amended Plan specifies that the Nelnet loan is a non-dischargeable student loan, which was to be re-paid by the plaintiff "Directly Outside of Plan." (*Id.* at 10).

The Amended Plan was confirmed by the Bankruptcy Court on November 4, 2011. (*Id.*, ECF No. 89).  The Confirmation Order states that the plaintiff was to pay Nelnet directly. (*Id.* at 5).  As noted by the defendant, the Confirmation Order further specified as follows:    "**The debtors acknowledge that the student loan obligations are non-dischargeable and that the balance of the student loans are not paid through the Plan or during the pendency of the Plan will be due and owing at the end of the case.**" (*Id.*) (bold in original).

On July 15, 2015, the Bankruptcy Court entered a "Discharge of Debtor After Completion of Chapter 13 Plan" order. (*Id.*, ECF No. 197).  On December 22, 2015, the Bankruptcy Court entered the "Final Decree Closing Case." (*Id.*, ECF No. 213).  Thus, the defendant asserts that, pursuant to the terms of the Amended Plan and the court's orders, the outstanding balance due and owing on the student loan serviced by Nelnet became due and owing on December 22, 2015. (ECF No. 20 at 2-3).

On September 6, 2018, the plaintiff filed his initial Complaint against various defendants in the Circuit Court of Kanawha County, West Virginia. (ECF No. 1, Attach.

---

[1] This court may take judicial notice of the bankruptcy court record.  *See* Fed. R. Evid. 201; *see also, e.g., Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) (court may take judicial notice of other proceedings in a case involving the same litigant); *U.S. v. Mattox*, 402 F. App'x 507, 509 n.5 (11th Cir. 2010) (court may take judicial notice of its own records and those of inferior courts); *Thompson v. Bryant*, No. 08-C-68, 2008 WL 1924954, *2 n.1 (N.D. Ill. Apr. 30, 2008) (taking judicial notice of Chapter 13 bankruptcy records).

1).  On September 10, 2018, he filed an Amended Complaint in the Circuit Court of Kanawha County, which added Nelnet as a defendant.  (ECF No. 3 at 19-30).  On November 11, 2018, the defendants removed the matter to this federal court.  (ECF No. 1).  The Amended Complaint generally alleges that: (1) the plaintiff learned of "erroneous personal information and delinquent balances" being reported on his credit reports; (2) the plaintiff disputed the information; (3) unspecified defendants allegedly verified the accuracy of the reports based upon erroneous information; (4) unspecified defendants refused to correct the information and failed to properly investigate the disputes; and (5) the plaintiff was damaged.  (ECF No. 3 at 23-24, ¶¶ 19-30).

However, the plaintiff fails to provide specific facts concerning the conduct of each defendant, or his communications with each defendant.  Rather, he simply alleges that he "contacted all of the above-named Defendants and informed them of the errors contained on their credit reports, which resulted from erroneous and inaccurate reporting," and that he "disputed the said specific account inaccuracies directly with the above-named furnishers of information numerous times as well."  (*Id.*, ¶¶ 21, 23).  He then generally asserts that the "Defendants willfully, purposefully, and with utter disregard for Plaintiff's rights, refused to correct the information disputed by Plaintiff and continue to report such information Defendants know to be incorrect."  (*Id.*, ¶ 25).

The Amended Complaint asserts violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-2-124, 46A-2-127, and 46A-6-104 (Counts I, II, and III); a violation of the West Virginia Collections Agency Act ("WVCAA"), W. Va. Code § 47-16-4 (Count IV); and state law claims of negligence (Count V), defamation (Count VI), intentional infliction of emotional distress (Count VII) and negligent infliction of emotional distress (Count VIII).  The Amended

Complaint also contains a separate claim requesting punitive and/or treble damages (contained in a second Count IV, which the undersigned believes was meant to be Count IX).[2]

On December 13, 2018, Nelnet filed the instant Motion to Dismiss (ECF No. 19) and Memorandum of Law in support thereof (ECF No. 20) asserting that the Amended Complaint lacks sufficient factual support to satisfy basic pleading requirements under the Federal Rules of Civil Procedure; that the plaintiff's state law claims are preempted by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*.; and that the plaintiff cannot make a stand-alone claim for punitive or treble damages.

Nelnet's motion documents correctly contend that the Amended Complaint "provides no dates, details, or other information to support which entities took which actions or when said actions occurred; he identifies no specific disputed information regarding Nelnet or why Plaintiff believes Nelnet's credit reporting information is inaccurate." (ECF No. 20 at 4). Nelnet's memorandum also suggests that it appears that the plaintiff erroneously believes that his student loan accounts were discharged in the bankruptcy proceeding and thus, should not be reported on his credit report. (*Id*. at 4 n.5). The plaintiff has not opposed Nelnet's motion.

## **STANDARD OF REVIEW**

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be

---

[2] The undersigned believes this was a typographical error and will hereinafter refer to this count as Count IX.

granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

## ANALYSIS

### A. The Amended Complaint fails to state any plausible claim for relief under the WVCCPA or the WVCAA and those claims should be dismissed under the dictates of *Iqbal* and *Twombly*.

The Amended Complaint alleges that Nelnet (d/b/a FirstMark) is a corporation headquartered in Lincoln, Nebraska, which conducts business in Kanawha County, West

Virginia.    The Amended Complaint further alleges the following concerning Nelnet (d/b/a FirstMark):

> Firstmark is a lender within the meaning of the WVCCPA, W. Va. Code § 46A-1-102(23), a debt collector within the meaning of the WVCCPA, W. Va. Code § 46A-2-122(d), a collection agency within the meaning of the WVCAA, W. Va. Code § 47-16-2(b), and is a furnisher of information that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

(ECF No. 3 at 22, ¶ 13).    However, after making these specific assertions, the Amended Complaint fails to set forth any specific conduct by Nelnet which is alleged to have constituted violations of these state statutes or the common law claims contained therein.

Thus, Nelnet's motion asserts that the plaintiff's Amended Complaint fails to satisfy basic pleading requirements for each of his claims.    Specifically, Nelnet's Memorandum of Law contends:

> In Counts I, II, and III, Plaintiff globally asserts that "Defendants have willfully and/or negligently failed to comply with the WVCCPA requirements" of sections 6-104, 2-124, 2-127, respectively.  (Am. Comp. ¶¶ 32, 35, and 38).  For the claims, Plaintiff merely references the statutory sections generally.  (*Id.* at ¶¶ 32, 35, 38, and 41).  He fails to specify which subsections of the WVCCPA statutes were violated, fails to make specific allegations against Nelnet, and fails to link his factual allegations to how the facts support his claim that a WVCCPA subsection was violated.  (*Id.*) Plaintiff generally claims that failing to comply with the referenced statutes caused Plaintiff damage.  (*Id.* at ¶¶ 33, 36, 39, and 42.)
>
> Plaintiff's omissions are problematic because the WVCCPA sections Plaintiff cites in his Amended Complaint may each be violated in a variety of ways.  Plaintiff leaves Nelnet and the Court to guess what he is claiming or may claim.  He does not provide Nelnet any clear notice of his legal claims or any basis for this Court to limit discovery.  Plaintiff fails to satisfy basic pleading requirements with respect to the WVCCPA claims as required by *Iqbal/Twombly* and the claims must be dismissed.

(ECF No. 20 at 7-8).  Nelnet's memorandum then addresses each of the sections of the WVCCPA cited in the plaintiff's Amended Complaint and attempts to demonstrate why the Amended Complaint insufficiently alleges facts to support each claim.

## W. Va. Code § 46A-6-104

In Count I of the Amended Complaint, the plaintiff alleges that "Defendants" willfully or negligently failed to comply with the requirements of W. Va. § 46A-6-104, which governs general consumer protection.  As noted by Nelnet, section 46A-6-104 states that "Unfair methods of competition and unfair or deceptive acts and practices in the conduct of any trade or commerce are hereby declared unlawful."  W. Va. Code § 46A-6-104.  The Act further defines "trade or commerce" as "the advertising, offering for sale, sale, or distribution of any goods or services . . . ."  W. Va. Code § 46A-6-102(6).  "Unfair methods of competition and unfair or deceptive acts or practices" is defined as 16 specific types of activities, as set forth in section 46A-6-102(7).  W. Va. Code § 46A-6-102(7).  (ECF No. 2- at 8).  Nelnet claims that the plaintiff has not alleged any facts whatsoever concerning Nelnet's actions or conduct, let alone conduct that would fall within these definitions.  Thus, Nelnet asserts that this claim must be dismissed under the dictates of *Iqbal* and *Twombly*.  (*Id.*)

## W. Va. Code § 46A-2-124

Similarly, Count II of the Amended Complaint generally alleges that "Defendants" willfully and/or negligently failed to comply with the requirements of W. Va. Code § 46A-2-124.  Section 46A-2-124 lists collection activities by a "debt collector" that constitute threats or coercion.  As noted by Nelnet, the list includes using or threatening violence, accusing or threatening to accuse someone of fraud or criminal conduct, and threatening that non-payment will result in arrest.  W. Va. Code § 46A-2-

7

124.    However, the Amended Complaint fails to allege any specific conduct by Nelnet that would constitute threats or coercion.  Nelnet contends that "Plaintiff does not allege that Nelnet threatened him or that Nelnet perpetuated [sic; perpetrated?] any violence or coercion."  (ECF No. 20 at 9).  Thus, Nelnet asserts that this claim must also be dismissed under *Iqbal* and *Twombly*.

W. Va. Code § 46A-2-127

Count III of the Amended Complaint further generally asserts that "Defendants" willfully and/or negligently failed to comply with section 46A-2-127 of the WVCCPA, which contains a list of collection activities that constitute fraudulent, deceptive, or misleading representations.  W. Va. Code § 46A-2-127.  Nelnet's memorandum provides the following examples of the types of activities that are implicated by this section:

> The list includes using an improper name, claiming to have valuable information, failing to disclose a company's name, false information about the "character, extent, or amount of a claim," falsifying credentials, falsifying official documents, representing that debts may be increased with impermissible fees, or false information about the collector's services or business. *Id.*

(ECF No. 20 at 9).  Nelnet further asserts that the Amended Complaint does not allege any specific conduct by Nelnet that would qualify under this section.    (*Id.*) Consequently, Nelnet contends that this claim must also be dismissed under *Iqbal* and *Twombly*.

The plaintiff has not opposed Nelnet's assertions that his claims fail to satisfy the pleading criteria to sufficiently assert claims under the WVCCPA.  Thus, to the extent that Nelnet may be considered a lender or debt collector under the WVCCPA, the undersigned proposes that the presiding District Judge **FIND** that the allegations contained in the Amended Complaint fail to state any plausible claim for relief under

sections 46A-6-104, 46A-2-124, or 46A-2-127 of that Act.  Thus, Counts I, II, and III should be dismissed for failure to state a claim, pursuant to the dictates of *Iqbal* and *Twombly*.

W. Va. Code § 47-16-4

In Count IV of the Amended Complaint, the plaintiff alleges that "Defendants" willfully and/or negligently failed to comply with the requirements of W. Va. Code § 47-16-4.  That code section, which is part of the WVCAA, governs licensing and bond requirements for collection agencies in the State of West Virginia.  Section 47-16-2 defines "collection agency" as:

> all persons, firms, corporations and associations: (1) directly or indirectly engaged in the business of soliciting from or collecting for others any account, bill, or indebtedness originally due or asserted to be owed or due another and all persons, firms, corporations and associations directly or indirectly engaged in asserting, enforcing or prosecuting those claims; (2) which, in attempting to collect or in collecting his or her or its own accounts or claims uses a fictitious name or names other than his or her or its own name; (3) which attempts to or does give away or sell to others any system or series of letters or forms for use in the collection of accounts or claims which assert or indicate directly or indirectly that the claims or accounts are being asserted or collected by any person, firm, corporation or association other than the creditor or owner of the claim or account; or (4) directly or indirectly engaged in the business of soliciting, or who holds himself or herself out as engaged in the business of soliciting, debts of any kind owed or due, or asserted to be owed or due, to any solicited person, firm, corporation or association for fee, commission or other compensation.

> The term "collection agency" shall not mean or include: (1) Regular employees of a single creditor or of a collection agency licensed hereunder; (2) banks; (3) trust companies; (4) savings and loan associations; (5) building and loan associations; (6) industrial loan companies; (7) small loan companies; (8) abstract companies doing an escrow business; (9) duly licensed real estate brokers or agents when the claims or accounts being handled by such broker or agent are related to or in connection with such brokers' or agents' regular real estate business; (10) express and telegraph companies subject to public regulation and supervision; (11) attorneys-at-law handling claims and collections in their own names and not operating a collection agency under the management of a layman; (12)

any person, firm, corporation or association acting under the order of any court of competent jurisdiction; or (13) any person collecting a debt owed to another person only where: (A) Both persons are related by wholly-owned, common ownership or affiliated by wholly-owned corporate control; (B) the person collecting the debt acts only on behalf of persons related as described in paragraph (A) of this subdivision; and (C) debt collection is not the principal business of the person collecting the debt.

W. Va. Code § 47-16-2(b).

As noted by Nelnet, beyond baldly asserting that Nelnet is a collection agency under this provision, the Amended Complaint fails to provide any specific factual allegations to support his contention that Nelnet is a collection agency under the Act, or to demonstrate how Nelnet allegedly violated section 47-16-4.   Thus, Nelnet's unopposed motion correctly contends that the Amended Complaint fails to state any plausible claim under the WVCAA.

Therefore, to the extent that Nelnet could be considered a collection agency under the WVCAA, the undersigned proposes that the presiding District Judge **FIND** that the allegations contained in the Amended Complaint fail to state any plausible claim for relief thereunder and Count IV should be dismissed for failure to state a claim, pursuant to the dictates of *Iqbal* and *Twombly*.

### B.    The plaintiff's state statutory claims are preempted by the Fair Credit Reporting Act.

Nelnet's motion further asserts that, even if the district court determines that the Amended Complaint sufficiently pleads facts sufficient to state claims under these state statutes, such claims are preempted by provisions of the Fair Credit Reporting Act ("FCRA"), which imposes certain obligations on three types of entities:  (1) consumer reporting agencies ("CRAs"); (2) users of consumer credit reports; and (3) entities that furnish debt information to CRAs ("furnishers").  *See* 15 U.S.C. §§ 1681-1681x; *Wenner*

*v. Bank of America, N.A.*, 637 F. Supp.2d 944, 951 (D. Kan. 2009); *Evans v. Trans Union, LLC*, No. 2:10-cv-00945, 2011 WL 672061, *3 (S.D. W. Va., Feb. 14, 2011) (Johnston, J.)

Specifically, Nelnet's undisputed motion states that 15 U.S.C. § 1681t(b)(1)(F) preempts the state law statutory claims. (ECF No. 20 at 15-17). That section provides:

> (b)  General exceptions.  No requirement or prohibition may be imposed under the laws of any State – (1) with respect to any subject matter regulated under – (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F).  Section 1681s-2 sets forth the responsibilities of a furnisher of information to consumer reporting agencies, including the duty to provide accurate information and to investigate, verify, and report inaccuracies when notified of a dispute.  15 U.S.C. § 1681s-2.  The Amended Complaint alleges that Nelnet is such a furnisher of information.  (ECF No. 3 at 4, ¶ 13).

The FCRA contains another preemption provision, 15 U.S.C. § 1681h(e), which states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding *in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information* against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added).

Courts across the country have struggled with the interplay between these two preemption provisions and their application to various state law claims concerning fair

credit reporting.  Various federal courts have applied three different approaches to resolve the apparent conflicts between these two provisions:  a "total preemption approach;" a "temporal approach;" or a "statutory approach."  *See Evans, supra*, 2011 WL 672061 at *4-6.  The Fourth Circuit has not directly addressed this issue.

In *Evans*, using the "statutory approach," the presiding District Judge herein determined that state statutory claims related to credit information furnishers are preempted by section 1681t(b)(1)(F), and that certain state common law claims are preempted by section 1681h(e).  2011 WL 672061 at *6-7.  Relying on *Evans*, another member of this court described the "statutory approach" as follows:

> In considering how those two preemption provisions within the FCRA work together, the Southern District of West Virginia examined three different approaches in *Evans v. Trans Union, LLC*, and adopted the "statutory approach."  *Evans*, 2011 WL 672061 at *4-6.  According to this approach, the FCRA preemption provision in 15 U.S.C. § 1681t(b)(1)(F) specifically preempts cause of actions that arise from state statutes governing the duties of furnishers who submit information to credit reporting agencies, while the preemption provision in 15 U.S.C. § 1681h(e) specifically preempts "only certain state common law causes of action."  *Evans*, 2011 WL 672061 at *6.  The *Evans* court explained that the statutory approach afforded Congress the proper deference, and was supported by other district courts within the United States Court of Appeals for the Fourth Circuit.  *Id.*; *Barnhill v. Bank of America, N.A.*, 378 F. Supp.2d 696, 703-04 (D.S.C. 2005).

*Horton v. Synchrony Bank,* 2016 WL 6582990, *3 (S.D. W. Va. Nov. 4, 2016) (Berger, J.).

As further noted by Nelnet, in *Horton*, the plaintiff alleged that a furnisher of information violated several provisions of the WVCCPA and the FCRA when reporting an account after the plaintiff disputed the accuracy of the account's reported information.  *Id.* at *1.  (ECF No. 20 at 16).  Applying the statutory approach, the district court found that the substance of Horton's claims was grounded in the furnishing of

information to a credit reporting agency, which is specifically governed by section 1681s-2 of the FCRA. Thus, the court further found that the WVCCPA claims were preempted by the FCRA.

In the instant case, despite a lack of specific facts concerning Nelnet's alleged conduct, it is apparent that the Amended Complaint is asserting that Nelnet, as a furnisher of information to credit reporting agencies (CRAs), failed to provide accurate information to such CRAs and failed to investigate, verify, and correct alleged inaccuracies upon notification of a dispute and, thereby, allegedly violated the identified West Virginia statutes. The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's state statutory claims fall under section 1681s-2 and are, thus, preempted by section 1681t(b)(1)(F) of the FCRA. Thus, the undersigned further proposes that the presiding District Judge **FIND** that Counts I through IV of the Amended Complaint must be dismissed.[3]

### C.     The plaintiff's state common law negligence and defamation claims are also preempted by the FCRA.

In Counts V, VI, and VIII, the plaintiff alleges state law tort claims of negligence, defamation, and negligent infliction of emotional distress. Specifically, in Count V, the plaintiff claims that "Defendants owed a duty of care to Plaintiff to use reasonable care to prevent the inaccurate reporting of Plaintiff's credit information" and that "Defendants" breached that duty and proximately caused injury to the plaintiff. (ECF

---

[3] Nelnet's motion further contends that there is no private right of action under section 1681s-2(a) for violations thereof, as this subsection must be "enforced exclusively" by federal agencies and officials, or specifically identified state officials, as addressed in subsection 1681s-2(d). (ECF No. 20 at 16 n.8). Therefore, Nelnet contends that, to the extent that the plaintiff's claims can be construed to fall under section 1681s-2(a), which governs the knowing furnishing of inaccurate information to a CRA, he could not successfully pursue such a claim. However, the FCRA does provide a private right of action for consumers against furnishers of information if they fail to comply with the investigative duties once notified of a dispute under section 1681s-2(b). Nonetheless, based upon the allegations contained therein, the Amended Complaint fails to sufficiently state such a claim against Nelnet.

No. 3 at 26-27, ¶¶ 43-47).  In Count VI, the plaintiff claims that "Defendants published libelous, defamatory and otherwise untrue statements regarding Plaintiff to third parties" which "diminished Plaintiff's reputation in the eyes of others."  (*Id.* at 27, ¶¶ 48-51).  Furthermore, in Count VIII, the plaintiff claims that "Defendants negligently caused emotional distress and physical injury to Plaintiff" and that such conduct "offended the generally accepted standards of decency and morality."  (*Id.* at 28, ¶¶ 56-60).

All of these claims arise out of the plaintiff's general assertion that the defendants provided erroneous information to credit reporting agencies and failed to verify the accuracy of such information upon notice of a dispute.  Thus, to the extent that such conclusory allegations could even satisfy the pleading requirements of *Iqbal* and *Twombly*, these state common law claims are preempted by section 1681h(e) of the FCRA, discussed above.

Nelnet claims that the plaintiff's common law claims for negligence and defamation are explicitly preempted by FCRA section 1681h(e).  "[T]raditional preemption operates as a defense, which [] results in dismissal of a conflicting state law claim."  *See Beeler v. Western Southern Life Ins. Co.*, 247 F. Supp.2d 913 (S.D. Ohio 2002).  (ECF No. 20 at 13-14).  Nelnet's memorandum further states:

> Plaintiff asserts a claim for negligence in Count V and a claim for defamation in Count VI.  (Am. Compl. ¶¶ 43-51.)  For these claims, Plaintiff alleges that "Defendants" inaccurately reported information on Plaintiff's credit report and that defamatory and untrue information was published to third parties.  (*Id.*)  He has no specific, substantive allegations against Nelnet regarding on the non-dischargeable student loan account.  (*Id.*)  Because the FCRA specifically preempts common law negligence and defamation claims, Counts V and VI must be dismissed.

(*Id.*)  The undersigned agrees with this unopposed argument.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Counts V and VI of the Amended Complaint are preempted by section 1681h(e) of the FCRA and, further, fail to state a claim upon which relief can be granted.

Nelnet further asserts that the plaintiff's claims of negligent and intentional infliction of emotional distress contained in Counts VII and VIII are also preempted by section 1681h(e) because the Amended Complaint does not allege that Nelnet acted with malice.  (ECF No. 20 at 14-15).  While emotional distress claims are not specifically enumerated in section 1681h(e), absent an allegation that false information was furnished with "malice" or "willful intent to injure," <u>any negligence claim arising out of the furnishing of information to a credit reporting agency</u> is preempted by that section of the FCRA.

The undersigned agrees with Nelnet's analysis with respect to the negligent infliction of emotional distress claim contained in Count VIII.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Count VII of the Amended Complaint alleging negligent infliction of emotional distress is preempted by section 1681h(e) because it fails to allege any malice or willful intent to injure the plaintiff by Nelnet.  However, the undersigned believes that the intentional infliction of emotional distress claim warrants further analysis as addressed below.

**D.**    **The plaintiff's intentional infliction of emotional distress claim may not be preempted by the FCRA but, nonetheless, fails to state a claim upon which relief can be granted.**

Nelnet asserts that the plaintiff's claim for intentional infliction of emotional distress contained in Count VII is also preempted by section 1681h(e) of the FCRA because the plaintiff did not allege that Nelnet acted with "malice" or a "willful intent to

15

injure." (ECF No. 20 at 14-15). The plaintiff's claim in Count VII asserts that "Defendants, by extreme and outrageous conduct, intentionally and/or recklessly caused severe emotional distress to Plaintiff;" that "Defendants' conduct offended the generally accepted standards of decency;" and that "Defendants' conduct is causally connected to Plaintiff's emotional distress." (ECF No. 3 at 27-28, ¶¶ 53-55).

While Nelnet correctly asserts that this claim does not allege that Nelnet acted with "malice" or a "willful intent to injure" and, thus, would meet the preemption provision contained in section 1681h(e) with respect to that criterion, the undersigned does not believe that a claim of intentional infliction of emotional distress ("IIED") under West Virginia law can be squarely characterized as a form of negligence, defamation, or invasion of privacy, which is the first criterion under section 1681h(e). At best, because the plaintiff essentially contends that the defendants provided false or inaccurate information to credit reporting agencies and that such information was published to unidentified third parties, a liberal construction of those allegations might allow a finding that the IIED claim is a form of defamation that would fall into the scope of section 1681h(e); however, the undersigned believes such construction strains credulity. Thus, the undersigned does not believe that an IIED claim under West Virginia law is preempted by the FCRA.

Nonetheless, as argued in the alternative by Nelnet, the plaintiff's IIED claim fails to state a claim upon which relief can be granted because his conclusory allegations do not satisfy the elements of such a claim under West Virginia law. In Syllabus Point 6 of *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982), the Supreme Court of Appeals of West Virginia (the "SCAWV") set forth the elements of an intentional infliction of emotional distress claim as "[o]ne who by extreme and

16

outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Such a claim is also known as the tort of outrage. *Id.* at 703.  In order to establish a claim for intentional infliction of emotional distress or outrage, the plaintiff must prove the following:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendants acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).  As previously noted by the SCAWV, whether the complained-of conduct is legally outrageous is a question of law to be decided by the trial court.  *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 404 (W. Va. 2008).  To be legally outrageous, the conduct must be "more than unreasonable, unkind, or unfair; it must truly offend community notions of acceptable conduct."  *Travis*, 504 S.E.2d at 425.

The circumstances in which liability for intentional infliction of emotional distress has been imposed are extremely rare, and "firm judicial oversight is required in order to avoid losing control over the tort."  *See Hines v. Hills Dep't Store,* 454 S.E.2d 385 (W. Va. 1994) and *Johnson v. Hills Dep't Store*, 488 S.E.2d 471, 476 (W. Va. 1997). The standard is so stringent that it is not enough even when a defendant "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of

aggravation which would entitle" a plaintiff to punitive damages in another tort claim. *Harless*, 289 S.E.2d at 704-705.

The conclusory allegations in the Amended Complaint, asserting that the defendants furnished inaccurate information to credit reporting services and failed to verify the accuracy of and correct such information, do not rise to the high level of outrageousness necessary to support a claim of intentional or reckless infliction of emotional distress. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a plausible IIED claim and, thus, Count VII must be dismissed.

### E.   Count IX of the Amended Complaint fails to state a proper claim for punitive or treble damages.

In Count IX of the Amended Complaint, the plaintiff alleges that "Defendants acted, and/or failed to act, in conscious disregard of, or indifference to, a known risk of harm from their activities constituting willfulness, wantonness or recklessness" and that they had a "subjective realization of harm caused by their acts and/or failures to act." (ECF No. 3 at 28, ¶¶ 61-65). Consequently, the plaintiff contends that he is entitled to an award of punitive and/or treble damages from the defendants. However, as properly noted by Nelnet's motion, the State of West Virginia does not recognize an independent claim for punitive damages. Nelnet's memorandum states:

> A separate cause of action for punitive damages is not recognized by the State of West Virginia. *Roney v. Gencorp*, 431 F. Supp.2d 622, 638 (S.D. W. Va. 2006); *Miller v. Carelink Health Plans, Inc.*, 82 F. Supp.2d 574, 579 n.6 (S.D. W. Va. 2000) (citing *Cook v. Heck's Inc.*, 342 S.E.2d 453, 461 (W. Va. 1986)); *see also Miller v. SMS Schloemann-Siemag, Inc.*, 203 F. Supp.2d 633, 639-640 (S.D. W. Va. 2002) ("Although Count Four appears aimed solely at the recovery of punitive damages, such damages are not recognized under the law to express a separate cause of action"); *APS Food Sys. v. Ward Foods*, 70 A.D.2d 483 (N.Y.A.D. 1979); *Clemmons v.*

*Insurance Co.*, 163 S.E.2d 761 (N.C. 1968) ("As a rule, you cannot have a cause of action for punitive damages by itself.").

*Leo v. Beam Team, Inc.*, No. 2:10-cv-00534, 2012 WL 1111374, *5 (S.D. W. Va. Apr. 2, 2012) (Johnston, J). Thus, Nelnet claims that Count IX of the Amended Complaint must be dismissed. (ECF No. 20 at 17). However, Nelnet clarifies that it is not seeking to strike the plaintiff's request for punitive damages made in the ad damnum clause of the Amended Complaint. Rather, it is only seeking to dismiss the allegations in Count IX that appear to raise an independent claim for such damages. (*Id.* at 17 n.9).

The undersigned proposes that the presiding District Judge **FIND** that Count IX of the Amended Complaint fails to state an independent plausible claim for relief and should be dismissed.

## RECOMMENDATION

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the unopposed Motion to Dismiss filed by Nelnet Servicing, LLC d/b/a FirstMark Services (ECF No. 19) and dismiss the claims against that defendant, but leave this matter referred to the undersigned for additional proceedings concerning the claims against the remaining defendants.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b)(2), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written

objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and transmit a copy to counsel of record.

June 12, 2019

Dwane L. Tinsley
United States Magistrate Judge

20